UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEAN BERNIER, #29463-054,

        Plaintiff,

                              No. 15-CV-209(RJA)(HBS)

-vs-                      **Report and Recommendation**

SWEET AND LEPKOWSKI,

        Defendants.
_____

**I.    Introduction**

This case has been referred to the undersigned by Hon. Richard J. Arcara for all pre-trial matters, including preparation of a Report and Recommendation on dispositive motions. (Dkt. No. 37.) Currently pending before the Court is Defendant Lepkowski's ("Deft. Lepkowski") motion to dismiss. (Dkt. No. 61.)

**II.    Factual Background and Procedural History**

Plaintiff Jean Bernier, a/k/a Charles Watson ("Plaintiff"),[1] an inmate in the care and custody of Federal Bureau of Prisons, filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was incarcerated at Elmira Correctional Facility ("Elmira") under the New York State Department of Corrections and Community Supervision ("DOCCS") (Dkt. No. 60.) Because Plaintiff's original complaint (Dkt. No. 1) alleged multiple violations against various DOCCS employees not assigned to Elmira and outside of the Western District, the Court previously granted Defendants'

---

[1] As the Court has previously acknowledged, Plaintiff began this case under the name Charles Watson and subsequently changed his name in the caption to Jean Bernier. (Dkt. No. 49 at 1, n.1.)

1

motion to sever claims arising at Auburn and Cayuga Correctional Facilities. (Dkt. No. 50.) Plaintiff then amended his complaint (Dkt. No. 60) to allege that defendants captioned as "ORC Sweet" and "Hearing Officer Lepkowski" retaliated against him and denied him due process.[2]

The following facts are derived from the amended complaint and are assumed to be true for the purposes of this motion.

In July of 2012, Plaintiff was served a disciplinary report authored by ORC Sweet accusing him of a rule violation. (Dkt. No. 60, ¶ 11.) The disciplinary report "had just stated a charge without describing any particular acts of conduct . . . Plaintiff had no notice of exactly what actions he was defending against." (*Id*., ¶ 14.)

Deft. Lepkowski conducted the disciplinary hearing sometime in early August, 2012. (*Id*., ¶ 11.) Two officers testified on Plaintiff's behalf. (*Id.*) Plaintiff also requested someone named Ms. Rasheena to testify at the hearing, but his request was denied by Deft. Lepkowski because the witness did not work for DOCCS. (*Id.*, ¶¶ 12, 13.)

Deft. Lepkowski found Plaintiff guilty and sanctioned him to 90 days in the Special Housing Unit ("SHU"). (*Id.*, ¶ 15.) Plaintiff subsequently served the SHU sentence at Cayuga Correctional Facility ("Cayuga"), in S-Block, a double-celled unit. (*Id.*, ¶ 16.) With regard to the SHU confinement, Plaintiff alleges:

> You are kept in the cell 24 hours a day. For recreation there is a space in the back of the cell which is opened an hour a day. This means that you never go outside and are effectively deprived of sunshine. All personal property is prohibited except for legal work. There are no hygiene supplies available but for a small bar of soap on shower days. There is no access to commissary to buy lotion and shampoo, baby oil or hair grease. There is a limit on underwear and clothing and when

---

[2] Deft. Lepkowski filed the instant motion in lieu of answering the amended complaint. Defendant Sweet has not yet filed an answer.

> they are washed. There is a limit on paper and envelopes and on materials you can obtain and research from the law library.
>
> You are shackled and handcuffed whenever you are escorted out of the cell and the restraints are kept on even in a visit to see medical staff or on a personal visit which is non-contact and behind the glass.

(*Id.*, ¶¶ 16, 17.) Plaintiff also alleges that he was "exposed to being with another individual twenty-four hours a day and all the baggage that comes with that, conflicts and fights." (*Id.*, ¶ 17.)

Plaintiff appealed the disciplinary determination, which was administratively reversed on October 16, 2012, nine days prior to the completion of his 90-day sentence. (*Id.*, ¶¶ 18-19.) But, Plaintiff claims, he was not released from SHU until June, 2013, after serving "an aggregate of eleven months in SHU." (*Id.*) This claim of an aggregate eleven months of confinement is derived from the facts set forth in the original complaint in this action. (Dkt. No. 1.) Because Plaintiff is proceeding *pro se*, the Court considers both his original and his amended complaints together for purposes of asserting his due process claim against Deft. Lepkowski. *See Little v. City of New York*, 13-CV-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014).

Plaintiff was transferred to Cayuga in August, 2012, to serve his 90-day SHU sanction. While housed at Cayuga, Plaintiff received multiple misbehavior reports for failing to obey an order and refusing to agree to double-bunk housing. (Dkt. No. 1, ¶¶ 29, 32-36.) Plaintiff participated in three disciplinary proceedings at Cayuga, dated October 17, October 26, and November 15, 2012, after which he was sentenced to 30, 60, and 180 days of additional SHU time, respectively. (*Id.*, ¶¶ 32-35.)

Plaintiff then filed this action, challenging, *inter alia*, the disciplinary proceedings at Elmira and Cayuga. (Dkt. Nos. 1, 60.)

Deft. Lepkowski now seeks dismissal of the claims against him on the grounds that: (1) Plaintiff has not alleged a liberty interest of which he was deprived; (2) the conditions of SHU were not atypical; (3) Plaintiff cannot aggregate subsequent SHU penalties imposed by different hearing officers to establish the deprivation of a liberty interest; (4) Plaintiff's separate claims of due process violations with respect to his later disciplinary hearings at Cayuga Correctional Facility were dismissed; and (5) Deft. Lepkowski is entitled to qualified immunity. (Dkt. No. 61-1 at 6-14.)

For the reasons set forth below, the Court recommends granting Deft. Lepkowski's motion dismissing the claims against him.

## III. Discussion

### A. General Principles of Law

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans*, Inc., 421 F.3d 96, 100 (2d Cir. 2005). It need not accept as true, however, allegations that are conclusory, threadbare, and lack specificity. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Because Plaintiff is proceeding *pro se*, the Court must "construe [the] complaint liberally and interpret it to

raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotations omitted).

Plaintiff brings this action under 42 U.S.C. § 1983, which imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In other words, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

### B. Atypical and Significant Hardship

A party asserting a due process claim "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). An inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration and conditions of confinement are factors to be considered by a court when determining whether a confinement rises to the level of "atypical and severe hardship." *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). While there is no bright-line rule regarding the length of confinement in segregation required to implicate due process, *see Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999), the Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical or significant hardship sufficient to state a claim under *Sandin*. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (101-day confinement in restrictive housing unpleasant but not atypical or significant); *Borcsok v. Early*, 299 Fed. Appx. 76, 78 (2d Cir. 2008) ("Even if we include the eleven days that

5

[plaintiff] spent in SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant."); *accord Walker v. Caban*, No. 08 Civ. 3025, 2008 WL 4925204, at *11 (S.D.N.Y. Nov.19, 2008) (finding 90 day period in solitary confinement, without more, did not implicate a liberty interest under *Sandin*); *Rivera v. Coughlin*, No. 92 Civ. 3404, 1996 WL 22342, at *5 (S.D.N.Y. Jan.22, 1996) (89 days in keeplock does not create a liberty interest).

Here, Plaintiff alleges that Deft. Lepkowski sentenced him to 90 days of SHU confinement following the guilty verdict stemming from the August, 2012, disciplinary hearing. (Dkt. No. 60, ¶ 15.) This, in and of itself, is not sufficient to implicate a protected liberty interest. Nor does he allege any conditions of confinement other than those deemed "normal" in SHU:

> Under the 'normal conditions of SHU confinement in New York [state prison],' the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited.

*Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004) (citations omitted, alterations in original). To the extent Plaintiff challenges the constitutionality of his confinement on the basis of having a cellmate while in SHU, *see* Dkt. No. 60, ¶ 17, courts have rejected this argument. *See Bolton v. Goord*, 992 F. Supp. 604, 607 (S.D.N.Y. 1998) ("Plaintiffs have failed to show that they suffered an atypical and significant hardship . . . in relation to the ordinary incidents of prison life . . . or that New York State has granted its inmates, by regulation or statute, a protected liberty interest in being free from being placed in a

6

double cell.") (quotation omitted); *see also Scott v. Gardner*, 287 F. Supp. 2d 477, 494 (S.D.N.Y. 2003) ("Apart from Scott's allegation that he was double-celled, the conditions Scott describes of his confinement in SHU are not materially at variance with these . . . . Confinement in a double occupancy cell may also be a part of normal SHU conditions."); *see also, e.g.*, *Jones v. Goord*, 190 F.R.D. 103, 109 (S.D.N.Y. 1999) (practice of double-celling inmates, standing alone, does not constitute cruel and unusual punishment under the Eighth Amendment).

Plaintiff also attempts to state a *Sandin* claim based upon "an aggregate of eleven months in SHU," apparently arising from the subsequent disciplinary proceedings at Cayuga, to state his due process claim. (Dkt. No. 60, ¶ 19.)

The Second Circuit has suggested that "separate SHU sentences 'should be aggregated for purposes of the *Sandin* inquiry' when they constitute a sustained period of confinement." *Giano*, 238 F.3d at 226 (quoting *Sims v. Artuz*, 230 F.3d 14, 22-23 (2d Cir. 2000)); *see also Sealey v. Gitner*, 197 F.3d 578, 589 (2d Cir. 1999) (requiring district court to aggregate sanctions that caused inmate to serve consecutive time in segregation). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 05-CV-0271, 2007 WL 4555932, at *8 (N.D.N.Y. Dec. 19, 2007).

The Court finds aggregation in this case inappropriate. Plaintiff's subsequent penalties at Cayuga, although appended to his existing SHU sentence imposed from

Elmira, arose from unrelated events that occurred at a separate correctional facility.³ Although Plaintiff was sent to Cayuga to complete his first SHU sentence, that initial SHU sentence stemmed from conduct that occurred at Elmira, whereas the second and subsequent SHU sentences stemmed from conduct that occurred at Cayuga. Thus, it cannot be said here that Plaintiff's overlapping sentences were "simply a continuation of his segregation." *Giano*, 238 F.3d at 226 ("Giano's segregation at Clinton was simply a continuation of his segregation at Attica. A review of the record indicates that the two periods of confinement were based on the same administrative rationale and that the conditions of Giano's confinement were, for all practical purposes, identical at both facilities.").

Likewise, Plaintiff's first and subsequent sentences do not share a hearing officer or a facility in common. *See, e.g.*, *Toliver v. Stefinik*, No. 12CV00077, 2016 WL 3349316, at *8 (N.D.N.Y. June 15, 2016) (aggregating where "Plaintiff served consecutive terms of confinement exceeding 30 days, and all of Plaintiff's disciplinary hearings at Shawangunk were conducted by the same individual, Defendant Gardner.") Nor did Deft. Lepkowski extend Plaintiff's SHU confinement. *See Sealey,* 197 F.3d at 587 ("[w]herever the point is beyond which confinement in harsh conditions constitutes atypicality, a prison official must not be permitted to extend such confinement beyond that point without according procedural due process.")*; Richardson v. Hillman*, 201 F. Supp. 2d 222, 229 (S.D.N.Y. 2001) ("Furthermore, the Second Circuit has expounded

---

³ The rule violation that purported to occur at Elmira involved a confrontation with ORC Sweet outside of Plaintiff's cell. (Dkt. No. 1, ¶¶ 19-28; Dkt. No. 60, ¶¶ 9-10.) The incidents at Cayuga all involved Plaintiff's violation of various disciplinary rules for his refusal to share a double-cell with another inmate. (Dkt. No. 1, ¶¶ 29-39.)

the responsibility for issuing officers to include the entire period in SHU that a prisoner was confined, if the officer *extended* the confinement period to constitute an atypical penalty.") (emphasis added).

Because Plaintiff cannot aggregate his subsequent penalties, he is left with an 86-day period of confinement resulting from the disciplinary hearing conducted by Deft. Lepkowski. As stated earlier, an inmate generally does not establish an atypical and significant hardship based on a confinement lasting less than 101 days, absent a showing that the conditions of his confinement rise to the level of an atypical and severe hardship. *Thousand v. Annucci*, No. 17CV0940, 2018 WL 882053, at *2 (N.D.N.Y. Feb. 13, 2018) ("the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship . . . ."). Accepting as true Plaintiff's allegations of 23-hour solitary confinement, loss of phone privileges, one hour of exercise per day, limited showers, restrictions on property, law library, educational materials, and visitation, he fails to state an atypical and significant hardship. *See Jenkins v. Cordero*, No. 17 CV 1592 (VB), 2018 WL 456311, at *4 (S.D.N.Y. Jan. 17, 2018) ("Plaintiff here has not alleged the conditions of his confinement in the SHU were more severe than normal or that brief SHU confinements were atypical.")

Thus, Plaintiff has failed to state a claim for the violation of his constitutional rights.

### C. Qualified Immunity

Deft. Lepkowski argues in the alternative that he is entitled to qualified immunity. (Dkt. No. 61-1 at 13-14.)

"Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014).

As Plaintiff fails to make the necessary threshold showing of an atypical and significant hardship arising from his SHU confinement, he consequently fails allege a constitutional violation. On that basis the Court need not reach Defendants' assertion of qualified immunity. *See Aiken v. Nixon*, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003) (only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

## IV. Conclusion

Based upon the above, it is recommended that the motion to dismiss this action for failure to state a claim upon which relief can be granted (Dkt. No. 61) be **GRANTED** and the amended complaint be dismissed with respect to Deft. Lepkowski.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

With respect to Defendants' motions to dismiss, **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988.

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the**

**provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Report and Recommendation and Order to Plaintiff and Defendants.

**IT IS SO ORDERED.**

                                  */s Hugh B. Scott*    .
                                  HON. HUGH B. SCOTT
                                  United States Magistrate Judge

Dated: February 26, 2018
         Buffalo, New York