UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Jean Bernier,

                              Plaintiff,

    v.

ORC Sweet,

                              Defendant.

**Report and Recommendation**

15-CV-209A

---

## I.  INTRODUCTION

In January 2012, plaintiff Jean Bernier was a New York state inmate who was transferred to the Elmira Correctional Facility ("Elmira") in Elmira, New York. During his time at Elmira, plaintiff received three reviews of his inmate program assignments: reviews that occurred in January, May, and August 2012. Plaintiff was permitted to attend the May and August reviews and was called out of his cell more than once, but he refused to attend. Plaintiff nonetheless made an informal inquiry in April 2012 about a quarterly review that he thought should occur that month; he also filed a grievance in August 2012 about the quarterly review that he thought should have occurred in April.

On July 25, 2012, defendant Tricia Sweet reported an incident with plaintiff. Defendant was a prison counselor at Elmira and was walking by plaintiff's cell when plaintiff called out to her to draw her attention. Defendant asserted that she observed defendant engaging in a sex offense. Defendant filed an inmate misbehavior report, and a hearing officer upheld the charge. The credibility of defendant's allegation and hearing testimony never was successfully challenged. Nonetheless, after the charge was reversed on administrative appeal for procedural reasons, plaintiff concluded that defendant accused him falsely. Plaintiff went further and decided that defendant

accused him falsely because he raised concerns to others about the quarterly review that he thought that he should have had in April 2012. On this basis, plaintiff commenced litigation that, in its current form following amendments and rulings, accuses defendant of First Amendment retaliation by way of 42 U.S.C. § 1983.

Defendant now has a motion pending for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 90.) Defendant argues that plaintiff failed to exhaust administrative remedies because he never filed a timely formal grievance about whatever concerns he had in April 2012. On the merits, defendant argues that she could not have retaliated against plaintiff because his quarterly reviews occurred, she had no contact with him until July 25, 2012, and she was found credible on the substance of her inmate misbehavior report. Plaintiff conceded at his deposition that he filed no formal grievance about his concerns until August 2012 and that he had no communication with defendant until July 25, 2012. Plaintiff nonetheless argues that defendant would have known through others about his informal complaints and that the procedural reversal of his charge means that the inmate misbehavior report was intentionally false.

District Judge Richard J. Arcara has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 37.) The Court has deemed the pending motion submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting defendant's motion.

**II.    BACKGROUND**

This case concerns allegations that defendant charged plaintiff falsely for misconduct, in retaliation for filing an inmate grievance. During the events relevant to this case, plaintiff was an inmate at Elmira. Plaintiff arrived at Elmira in January 2012 and received an inmate review of program assignments and recommended programs on January 27, 2012. (Dkt. No. 90-6 at 14–17.) Offender Rehabilitation Counselor ("ORC") Kenneth Donley ("Donley") performed the review.

Donley included plaintiff's history of programs successfully completed and refused. Plaintiff's next review was a quarterly review performed on May 7, 2012 by defendant. (Dkt. No. 90-6 at 10.) The May 2012 review was the only one that defendant performed. Inmates do not have to be present for quarterly reviews. (*See* Dkt. No. 90-4 at 15.) Nonetheless, defendant placed three "callouts" in the Elmira system to have plaintiff appear for an interview. (Dkt. No. 90-6 at 3.) Plaintiff refused to appear. (*Id.*; *see also* Dkt. No. 90-4 at 10, 21; Dkt. No. 90-6 at 10.) Plaintiff's next quarterly review occurred on August 23, 2012. (Dkt. No. 90-6 at 19.) Donley again was the assigned ORC. Plaintiff again did not attend.

The heart of plaintiff's allegations is a series of events that occurred between the initial review and the second quarterly review. Plaintiff became convinced that he was owed a quarterly review in April 2012 and wrote to Donley asking about a quarterly review that month. (Dkt. No. 90-3 at 112.) The letter to Donley was not a formal grievance under 7 N.Y.C.R.R. § 701.5. Plaintiff claimed at his deposition that he attempted to file a grievance about a quarterly review in April 2012, but no grievance was received or logged then. (Dkt. No. 90-3 at 34.) Plaintiff's first formal grievance about quarterly reviews in April 2012 was filed on August 2, 2012. (Dkt. No. 90-4 at 8.) When plaintiff wrote to the prison superintendent on April 25, 2012, he made no mention of defendant or of any deficiencies in quarterly reviews. (Dkt. No. 90-6 at 24.) At his deposition, plaintiff could not remember filing any grievances against defendant. (Dkt. No. 90-3 at 38.) Plaintiff did remember that he saw defendant for the first time on July 25, 2012. (*Id.* at 17.) Defendant and some other officials were giving a tour of Elmira to youthful offenders sent over from Elmira Youth Court as part of the Youth Assistant Program. The tour took defendant past plaintiff's cell. Plaintiff called out to defendant to get her attention. (*Id.* at 25.) Plaintiff otherwise described the encounter as uneventful, but defendant has asserted that "[o]nce inmate Bernier called

3

out to me to get my attention, I stopped and looked back into his cell.  Inmate Bernier was masturbating while talking to me." (Dkt. No. 90-6 at 2.)  Defendant filled out an inmate misbehavior report that charged plaintiff with an inmate sex offense.  (Dkt. No. 90-6 at 8.)  The hearing officer sustained the charge (Dkt. No. 90-3 at 109), but the prison superintendent later reversed it on procedural grounds.  (Dkt. No. 102-3 at 35; *see* Dkt. No. 90-1 at 22.)  The state court system found later that the procedural reversal could not sustain plaintiff's claim of wrongful confinement in the special housing unit because any procedural errors at the hearing did not affect the substantive evidence.  *See Watson v. State*, 3 N.Y.S.3d 446, 447 (N.Y. App. Div. 2015).[1]

The reversal of the inmate sex offense charge prompted this litigation.  Plaintiff commenced this case by filing his original complaint on March 6, 2015.  (Dkt. No. 1.)  After a series of amendments and rulings on defense motions, the operative pleading is one claim against defendant from plaintiff's second amended complaint.  (Dkt. No. 60.)  In this claim, plaintiff accuses defendant of writing a false inmate misbehavior report as retaliation for plaintiff's grievance against defendant.  Plaintiff claims a violation of his First Amendment rights by way of 42 U.S.C. § 1983.

Defendant filed the pending motion on June 28, 2019.  Defendant seeks summary judgment on several grounds.  Defendant argues that plaintiff failed to exhaust his administrative remedies if he believed that he suffered retaliation.  Plaintiff received the inmate misbehavior report about the alleged sex offense on July 25, 2012.  Under 7 N.Y.C.R.R. § 701.5, plaintiff had 21 days after receipt of the report to file a grievance about retaliation.  Plaintiff filed a grievance within that time, on

---

[1] Plaintiff pursued his state court case under the name Charles Watson.  Plaintiff originally began this case under the name Charles Watson but requested and received permission to change his name in the caption. (Dkt. Nos. 15, 17, 21, 22.)  Plaintiff has stated that "Jean-Gabriel Bernier" is his birth name (Dkt. No. 28 at 2), but the Court has no confirmation of that assertion, and the record otherwise is not clear as to the origin of the name "Charles Watson."  In any event, the Court notes plaintiff's name change only for the sake of the record; it does not appear to have any impact on the issues addressed in this Report and Recommendation.

August 2, 2012, but the grievance made no mention of retaliation, false reports, or any of the alleged events of July 25, 2012. The grievance instead focused exclusively on plaintiff's belief that he did not have a quarterly review when he thought that he was supposed to have one in April 2012. In defendant's view, therefore, plaintiff never explored, let alone exhausted, any administrative remedies regarding his belief that defendant retaliated against him or otherwise smeared him with an intentionally false report. Apart from procedural arguments, defendant argues on substance that no retaliation could have occurred because of the timing of plaintiff's grievance. According to defendant, plaintiff believed that he was owed a quarterly review in April 2012. Plaintiff wrote informally to ORC Donley about a quarterly review and claims to have attempted a grievance against defendant, but no grievance was ever received or filed. Plaintiff also has admitted that he had no contact with defendant until July 25, 2012. Plaintiff's formal grievance about quarterly reviews was not filed until August 2, 2012—after the filing of the inmate misbehavior report. If no grievance against defendant existed before July 25, 2012 and if plaintiff had no contact with defendant before July 25, 2012 then, in defendant's view, she had no event for which to retaliate against plaintiff. The absence of an event means factually that defendant had no reason to retaliate against defendant and means legally that plaintiff took no protected action before July 25, 2012. To the extent that plaintiff is accusing defendant of otherwise filing an intentionally false misbehavior report, defendant notes that the hearing officer upheld the charge and that the charge was reversed on appeal only for procedural reasons.

Plaintiff opposes the pending motion in all respects. With respect to exhaustion of administrative remedies, plaintiff argues that he filed a grievance about defendant's misbehavior report within 21 days of the reversal on appeal. Plaintiff notes that the prison system "accepted the Plaintiff's grievance and did not mention anything about untimeliness and responded on the merits

5

finding that there had not been a showing of employee malfeasance or retaliation." (Dkt. No. 101 at 5.)  As for protected conduct, plaintiff in his responding papers claims that he did make oral complaints about his quarterly review to defendant and her supervisors.  (*Id.* at 8.)  Plaintiff downplays any challenges concerning temporal proximity by asserting that he made some contact with defendant's supervisors one or two months before July 25, 2012.  Plaintiff cites his disciplinary record to highlight that, while he had eight misbehavior reports filed against him between 2005 and 2011, "[a] review of those dispositions will indicate that there never was a charge anywhere similar to the one authored by defendant Sweet and never will be." (*Id.* at 11.)  Plaintiff also stands by his assertion that, after calling out for her attention on July 25, 2012, defendant told him that she would "fix him for good for making complaints to her superiors."  (*Id.* at 16.)

### III. DISCUSSION
#### A. *Summary Judgment Generally*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).  "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence

6

in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "Where, as here, the nonmovant would bear the burden of proof at trial, the movant may show prima facie entitlement to summary judgment by either (1) pointing to evidence that negates its opponent's claims or (2) identifying those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact." *Barlow v. Male Geneva Police Officer who Arrested me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (internal quotation and editorial marks and citation omitted).

Additionally, the Court is mindful that inmates like plaintiff often are at a disadvantage during pretrial discovery. "While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).

### B. Assessment of Plaintiff's Arguments

Turning to the merits of the pending motion, the Court has to keep in mind what plaintiff's surviving claim actually is: "The action of defendant Sweet in writing a *false disciplinary report* against Plaintiff *due to the plaintiff registering [a] complaint and filing a grievance concerning defendant Sweet* is in violation of the Plaintiff's First Amendment right to petition the government for redress of grievances." (Dkt. No. 60 at 6 (emphasis added).) The undisputed evidence in the record shows

that the two critical elements of plaintiff's accusation, as highlighted above, are not true. With respect to the truth of the inmate misbehavior report filed against him on July 25, 2012, plaintiff is free to hold his own opinion that the report was false. He is the only one, however, to hold that opinion. No authority yet has found the charge to be substantively false. The hearing officer found defendant's testimony credible and sustained the charge. (Dkt. No. 90-3 at 109.) The charge later was reversed only because of a non-prejudicial procedural error by the hearing officer. The hearing officer refused to call a certain witness whom plaintiff requested, thinking erroneously that the witness could not be called unless an employee of the Department of Corrections and Community Supervision. Even so, plaintiff had "not established prejudice inasmuch as two additional correction officers who were also with the tour group testified that they did not see claimant doing anything inappropriate. Absent any evidence that the chaperone's testimony would have differed in any meaningful respect from that of the two additional correction officers or otherwise changed the outcome of the hearing, the Court of Claims properly denied claimant's motion for partial summary judgment. *Watson v. State*, 3 N.Y.S.3d 446, 447 (N.Y. App. Div. 2015) (citations omitted). Plaintiff undermines his credibility, distorts the record, and borders on asking for a reversal of a state-court determination when he asserts that a reversal on a procedural error "supports a Plaintiff's allegations that the misbehavior report was false and retaliatory." (Dkt. No. 101 at 12.) Plaintiff distorts the record further when he quotes an exhibit that purports to say that "the charges contained in the report were false and retaliatory in nature." (*Id.* at 4.) Here, plaintiff literally is quoting himself. After a transfer to Cayuga Correctional Facility ("Cayuga"), plaintiff filed a grievance on November 1, 2012 in which he wrote the above language and then asked Cayuga officials to discipline defendant at Elmira "for her malicious act of writing a false and retaliatory report." (*Id.* at 33.) Cayuga "accepted" the grievance in the narrow sense that it was formally filed (*id.* at 34), but officials

8

denied the grievance just days later on November 9, 2012. Cayuga explained the denial as follows: "[T]he grievance program is not intended to, nor will it support[,] an adversary process between offenders and employees. The IGRC asserts that it has not been presented with evidence of employee malfeasance or retaliation in the instant case. Furthermore, the IGRC does not assign guilt to, place blame on, or reprimand offenders or staff." (*Id.* at 35.) Consequently, and despite a procedural error not attributable to defendant, the substance of the inmate misbehavior report has not been found false after multiple administrative and judicial proceedings. In the absence of a finding of substantive falsity, plaintiff as a matter of law will not be able to establish any causal connection between the issuance of the inmate misbehavior report and any other events that he alleges. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) ("We have previously held that, to sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.") (internal quotation marks and citations omitted).

The other major element of plaintiff's claim that the Court highlighted above also is false. Regardless of any contradictions that he has placed elsewhere in the record, plaintiff conceded at his own deposition that he knows how to file grievances and that he never formally filed a grievance about defendant and quarterly reviews prior to July 25, 2012. (Dkt. No. 90-3 at 17, 34, 38, 53–75.) *See Muhammad v. Pico*, No. 02 CIV.1052 AJP, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."). Plaintiff conceded further that he had no contact with defendant prior to July 25, 2012. Defendant thus had no adverse event or communication from plaintiff that could serve as the basis for

9

retaliation.  *Cf. Carlson v. Parry*, No. 06-CV-6621P, 2012 WL 1067866, at *10 (W.D.N.Y. Mar. 29, 2012) (summary judgment for defense on retaliation claim where "Carlson has failed to adduce any facts or credible inferences that Parry even knew about Carlson's filing when he assigned Carlson to the Utility Gang") (citations omitted); *Brown v. Graham*, No. 9:07-CV-1353 FJS ATB, 2010 WL 6428251, at *17 (N.D.N.Y. Mar. 30, 2010) ("With respect to defendant Culkin, plaintiff testified at his deposition that he had never written to Culkin and has not identified the conduct of this defendant of which he complains."), *report and recommendation adopted*, No. 9:07-CV-1353 FJS ATB, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011).  Compared to any events that concerned plaintiff in April 2012, his formal grievance of August 2, 2012 fell well outside the 21-day deadline for grievances under 7 N.Y.C.R.R. § 701.5(a)(1).  Even the factual premise of plaintiff's informal communication to Donley in April 2012 is wrong.  Plaintiff did have quarterly reviews on May 7 and August 23, 2012.  (Dkt. No. 90-6 at 10, 19.)  Plaintiff was called out multiple times for these quarterly reviews and refused to attend.  (Dkt. No. 90-4 at 10, 21; Dkt. No. 90-6 at 3, 10.)  If plaintiff had wanted to attend the quarterly reviews and misunderstood the reason for the callouts then those issues would be a whole other matter.  Plaintiff, however, never filed any grievances, and thus never exhausted administrative remedies, regarding refused callouts.  Under these circumstances, plaintiff never experienced a procedural deprivation and never engaged in constitutionally protected conduct for purposes of establishing a retaliation claim.

## IV. CONCLUSION

After arriving at Elmira, plaintiff received an initial review as well as two quarterly reviews that he refused to attend.  Independent of any issues concerning the quarterly reviews, defendant observed plaintiff committing a sex offense on July 25, 2012 and filed an inmate misbehavior report about her observation.  The charge was dismissed on procedural grounds, but defendant's veracity

10

was never successfully challenged. Under these circumstances, no reasonable jury could find that the filing of the inmate misbehavior report was retaliation for complaints never formally filed about quarterly reviews that actually happened. For all of the above reasons, the Court respectfully recommends granting defendant's motion (Dkt. No. 90).

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to plaintiff by first-class mail, and counsel for defendant, by electronic filing on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

\_\_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: January 22, 2020